CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
IJEOMA U. EKE (Bar No. 331938)
(E-Mail: Ijeoma_Eke@fd.org)
JAMES S. THREATT (Bar No. 325317)
(E-Mail: Jimmy_Threatt@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
ANDREW ARCHIE REYES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW ARCHIE REYES, <br><br> Defendant. | Case No. 23-CR-00176-SVW <br><br> **DEFENDANT ANDREW REYES'S MOTION TO COMPEL PRODUCTION OF MATERIALS PURSUANT TO RULE 16 AND BRADY; EXHIBIT A** <br><br> Hearing: August 26, 2024 at 11:00 a.m. |

Defendant Andrew Archie Reyes, through counsel, hereby moves this Court for an Order directing the government to comply with its discovery obligations. Specifically, the defense hereby requests production of the following materials:

(1) All video (and audio) recordings of public areas at the Ventura Social Security Office, beginning 10 minutes before, and continuing 10 minutes after, the February 10, 2023 incident between Mr. Reyes and the complaining witness, J.P.;

(2) Any and all impeachment material from the personnel file of the complaining witness, J.P., who was a Paragon security officer stationed at the Ventura Social Security Office;

(3) The face mask policy in effect at the Ventura Social Security Office on

February 10, 2023, and any related policies promulgated by the Social

Security Administration as to the enforcement of any such policy at the

Ventura Office;

(4) Mr. Reyes's entire file maintained by the Social Security Administration; and

(5) All transcripts of testimony before the grand jury.

This motion is based upon the attached memorandum of points and authorities, all files and records in this case, and any further evidence and argument as may be presented at the hearing on this motion.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: August 8, 2024          By   */s/ James S. Threatt*
                                    _____
                                    IJEOMA U. EKE
                                    JAMES S. THREATT
                                    Deputy Federal Public Defenders
                                    Attorneys for Andrew Archie Reyes

2

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................0

II. RELEVANT BACKGROUND ..............................................0

III. ARGUMENT ...................................................................3

    A.    Rule 16 Requires Production of the Requested Materials. ..........................3

        1.    Recordings from the Social Security Office on February 10, 2023...................................................................3

        2.    All Impeachment Material in the Personnel File of J.P...................5

        3.    The Face Mask Policy in Effect on February 10, 2023. ...................5

        4.    Mr. Reyes's Entire Social Security Administration File. .................6

    B.    The Materials Must Also be Produced Under *Brady* and its Progeny.........6

    C.    The Transcripts of Grand Jury Testimony (Not All Proceedings) Must Separately be Produced. ..........................................................7

IV. CONCLUSION ................................................................10

## <u>MEMORANDUM OF POINTS AND AUTHORITES</u>

### I.INTRODUCTION

Andrew Archi Reyes is charged with a single count of violating 18 U.S.C. § 111(a)(1), specifically that he assaulted a security guard employed by Paragon Systems (J.P.) who was stationed at the Social Security Administration office in Ventura County on February 10, 2023.  (Dkt. 15.)  While partial video of the interaction between Mr. Reyes and J.P. has been produced in discovery, there are ample materials that have been requested by the defense—but not produced—which would shed additional light on the events of that day.  These materials include (but are not limited to) video of the <u>entire</u> interaction between Mr. Reyes and J.P., as well as video of the other public areas of the Social Security Office immediately before, immediately after, and during the incident.  These requested materials are highly material to the defense under Rule 16, are favorable to the defense under *Brady*, and have been requested by defense counsel multiple times beginning shortly after Mr. Reyes was charged.  Additionally, the defense has more recently requested all transcripts of grand jury testimony, which also must be produced pursuant to *Brady*, *Giglio*, and their progeny.

### II.RELEVANT BACKGROUND

Mr. Reyes made his initial appearance in federal court on March 15, 2023.  (Dkt. 7.)  On March 21, 2023—a mere six days later—former defense counsel sent a formal request for discovery to the government.  Approximately one month later, April 19, former counsel sent another request for discovery in which she specifically requested all video and audio recordings from the Ventura Social Security Office for at least 10 minutes before the incident involving Mr. Reyes and continuing at least 10 minutes after the incident, including footage of all other public areas of the social security office.

In its initial discovery productions, the government did produce certain surveillance footage, including a clip that is one minute and forty-one seconds long and which captures part of the interaction between Mr. Reyes and the complaining witness, J.P.  That video, however, does not appear to capture the entire interaction between Mr.

Reyes and J.P.  It also contains no audio.  Furthermore, the government did not produce all the requested surveillance footage, namely of all public areas of the Ventura Social Security Office—including, but not limited to, the inside lobby—for both 10 minutes before and 10 minutes after the incident.

On June 1, 2023, defense counsel sent a third letter to the government in which she re-iterated four specific prior requests for items that had not yet been produced, including the following:[1]

> a. All video and audio recordings documenting the interactions with my client on February 10, 2023 at the Ventura Social Security Office. Those records should begin at least 10 minutes before the interaction began, and end at least 10 minutes after the interaction ended.
> b. All video and audio recordings documenting what was occurring in the other public areas of the Ventura Social Security Office, including, but not limited to, the inside lobby, on February 10, 2023 while the interactions with my client were taking place. Those recordings should begin at least ten minutes before the interaction with my client began and end at least 10 minutes after the interaction ended.

Based on her review of the discovery that had been produced to that point, defense counsel also requested the following additional items: "Any impeachment material from the personnel file of JP, pursuant to *United States v. Henthorn* 931 F.2d 29 (9th Cir. 1991)."

Meanwhile, the issue of competency was also litigated.  On June 5, 2023, the Court ordered a competency evaluation.  For over an entire year—June 5, 2023 until July 29, 2024—the prosecution of Mr. Reyes was effectively stayed while the Court and the parties addressed the competency issue and related issues.  (Dkts. 30–65.)  At a July 29, 2024 status conference, the Court set a trial date of August 27, 2024 and ordered that any motions be filed no later than August 8.  (Dkt. 67.)

With Mr. Reyes's initial lawyer having left the Office of the Federal Public Defender, the very next day—July 30, 2024—current counsel re-transmitted prior

---

[1] Prior counsel's letter of June 1, 2023 is attached as Exhibit A.

1

counsel's third request for discovery that had been sent on June 1, 2023—which contained the above requests for video footage and *Henthorn* material—while adding the following request: "Mr. Reyes's complete social security file, including but not limited to, any applications filed, documentation of benefits rendered, and any documents regarding social security interactions (written or in-person) with Mr. Reyes."

The very next day, July 31, current counsel also requested all "discovery regarding the mask mandate that was in place [at the Ventura Social Security Office] on February 10, 2023, including but not limited to, SSA policies, internal memos, and any documentation or guidance provided to PSO [J.P.] regarding the mandate."  Defense counsel then repeated that request in e-mail on August 5, 2024.[2]  The government has produced photographs taken on or near the day of the incident that display a sign located at the Ventura Social Security Office.  The sign appears to set out the office's face mask policy.  It is not possible, however, to read what the sign says due to poor image quality.[3]  The government has also produced photographs taken several months after the February 2023 incident where the sign states that masks were <u>not</u> required and were instead optional.

At an in-person meet and confer on August 8, 2024, government counsel also declined to produce any transcripts of the grand jury proceedings in this case, because no anticipated trial witnesses testified before the grand jury.

---

[2] As recently as today, the government has represented that it is looking further into the defense requests, which may require coordination with the Social Security Administration.  However, given the motions deadline of August 8, defense counsel wanted to ensure these issues are preserved and is therefore filing the present motion while still awaiting additional information from the government.

[3] The government has indicated that it intends to produce higher quality photographs.  The defense has not, however, received any additional photographs yet.

# III.ARGUMENT

## A.    Rule 16 Requires Production of the Requested Materials.

Rule 16(a)(1)(E) of the Federal Rules of Criminal procedure requires the government to produce to the defense, upon request, any items that are "material to preparing the defense," that the government "intends to use . . . in its case-in-chief," or that were "obtained from or [that] belong[] to the defendant."  Fed. R. Crim. P. 16(a)(1)(E)(i)-(iii).

The standard for disclosure under Rule 16 is a notably "low threshold" that "is satisfied if the information requested would have 'helped' [the defendant]' prepare a defense." *United States v. Lucas*, 841 F.3d 796, 804 (9th Cir. 2016) (quoting *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013)).  Because "[i]nformation that is not exculpatory or impeaching may still be relevant to developing a possible defense," the production required under Rule 16 is "broader than *Brady*."  *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013).  The "materiality" standard under Rule 16 "normally is not a heavy burden," and includes evidence that will "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal."  *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (quoting *United States v. Felt*, 491 F. Supp. 179, 186 (D.D.C. 1979)).  For purposes of Rule 16, "materiality" exists "so long as 'the information . . . help[s] [the defendant] prepare," even if that help is "simply caus[ing] a defendant to completely abandon a planned defense and take an entirely different path."  *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (cleaned up).

### 1.    Recordings from the Social Security Office on February 10, 2023.

The defense has requested all audio and video recordings of all public areas of the Ventura Social Security Office beginning 10 minutes before the incident between Mr. Reyes and the complaining witness, J.P., and continuing until 10 minutes after the incident concluded.  The defense has now made this request at least three different

3

times over 15 months.  The government has produced a video recording (with no audio) that is one minute and forty-one seconds long and which captures only part of the interaction between Mr. Reyes and J.P.  The government has also produced some video footage of other public areas outside the Ventura Social Security Office.  The government has not produced any surveillance from inside the Ventura Social Security Office.

The requested footage is highly material to the defense.  Mr. Reyes spoke at length to law enforcement immediately following the incident.  He described troubling events that had occurred inside the Ventura Social Security Office.  In fact, in his post-arrest interview, Mr. Reyes specifically asked investigators to collect the surveillance footage starting 10 minutes before the incident and continuing 10 minutes after. (USAO_000004.)  Mr. Reyes would then be able to "explain the whole story man." (USAO_000004.)  When asked why the footage was so important, Mr. Reyes elaborated that "they already had someone laid out on the floor [inside the office]" and that was why "they [J.P.] didn't wanna even let me in there."  (USAO_000004.)

The requested surveillance footage—including of the inside lobby—is thus highly material to the defense case in determining what happened on the day of the incident by (1) showing the entire interaction between Mr. Reyes and J.P. and (2) showing what Mr. Reyes may have seen and been responding to when he encountered J.P.  Put differently, the missing footage provides critical context for the interaction between Mr. Reyes and J.P. that is the entire basis for the prosecution.  These materials could also bear significantly on Mr. Reyes's credibility should he elect to testify in his defense.  And law enforcement has been on notice since the day of the incident— February 10, 2023—that this footage is material to the defense.[4]

---

[4] To the extent the requested video footage no longer exists, therefore, Mr. Reyes intends to request an adverse jury instruction.

### 2.     All Impeachment Material in the Personnel File of J.P.

The defense has also not received any materials from the personnel file of J.P., which was initially requested on June 1, 2023 and requested again on July 30, 2024. J.P., who is the complaining witness, will be the government's critical witness at trial. He may be the government's *only* witness.  The entire case could turn on his credibility. Any impeachment material in his personnel file is thus highly material.

The significance of any impeachment material in the personnel file is heightened in this case because the incident (1) occurred while J.P. was at work and (2) concerns his interactions with an individual trying to obtain assistance from the Social Security Administration.  Whether, for instance, J.P. has documented uses of excessive force against other such persons—or other kinds of disputes or unsavory acts at work, especially those that reflect specifically on his character for truthfulness—would be highly relevant.  To the extent any such impeachment material exists in J.P.'s personnel file, the defense moves to compel its production.

### 3.     The Face Mask Policy in Effect on February 10, 2023.

The defense has also requested discovery regarding the face mask policy in effect at the time of the February 10, 2023 incident: "discovery regarding the mask mandate that was in place [at the Ventura Social Security Office] on February 10, 2023, including but not limited to, SSA policies, internal memos, and any documentation or guidance provided to PSO [J.P.] regarding the mandate."  As detailed in the Complaint, it is apparently the government's theory that the incident between Mr. Reyes and J.P. started when J.P. informed Mr. Reyes that he was required to wear a face mask inside the building, and Mr. Reyes refused.  (Dkt. 1 ¶ 11.)

The government has produced photographs taken on or near the day of the incident that display a sign located at the Ventura Social Security Office.  The sign appears to set out the office's face mask policy.  It is not possible, however, to read what the sign says due to poor image quality.  The government has also produced

photographs taken several months after the February 2023 incident where the sign states that masks were <u>not</u> required and were instead optional.

Whether Covid face masks were in fact required on February 10, 2023—as opposed to optional—and whether J.P. had been instructed to enforce any such policy is highly material to the defense and bears on the credibility of J.P., who is the government's critical, and perhaps only, witness.

### 4.    Mr. Reyes's Entire Social Security Administration File.

Finally, the defense has requested "Mr. Reyes's complete social security file, including but not limited to, any applications filed, documentation of benefits rendered, and any documents regarding social security interactions (written or in-person) with Mr. Reyes."  As Mr. Reyes also described in his statement to law enforcement, he has had difficulty obtaining assistance from the Social Security Administration.  It is these difficulties that explain, at least in part, why he was even present at the Ventura Social Security Office on February 10, 2023.  The file may also document prior visits to the Ventura Social Security Office, which could also provide critical context for the events of February 10, 2023 if, for instance, Mr. Reyes had interacted with J.P. (or other Paragon employees) previously.  The contents of his social security file are thus also material to the defense case.

### B.    The Materials Must Also be Produced Under *Brady* and its Progeny.

The Constitution imposes an independent duty on the government to turn over evidence favorable to a defendant.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  Prosecutors have "a duty to learn of any favorable evidence known to the others acting on the government's behalf" and disclose it to the defendant.  *Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995); *see also United States v. Ruiz*, 536 U.S. 622, 627–28 (2002) ("[A] federal criminal defendant's . . . right to receive from prosecutors exculpatory impeachment material [is] a right that the Constitution provides as part of its basic 'fair trial' guarantee").

The government's pretrial *Brady* obligation extends to favorable evidence, regardless of any assessment of materiality. *United States v. Bundy*, 968 F.3d 1019, 1033 (9th Cir. 2020) ("[T]rial prosecutors must disclose favorable information without attempting to predict whether its disclosure might affect the outcome of the trial."); *see also United States v. Price*, 566 F.3d 900, 913 n.14 (9th Cir. 2009); *United States v. Olsen*, 704 F.3d 1172, 1183 (9th Cir. 2013). This includes impeachment evidence and exculpatory evidence. *Strickler v. Greene*, 527 U.S. 263, 280 (1999). In the pretrial context, the Ninth Circuit has instructed prosecutors to err on the side of disclosure: "[T]he proper test for pretrial disclosure of exculpatory evidence should be an evaluation of whether the evidence is favorable to the defense, i.e., whether it is evidence that helps bolster the defense case or impeach the prosecutor's witnesses . . . . [I]f doubt exists, it should be resolved in favor of the defendant and full disclosure made[.]" *Price*, 566 F.3d at 913 n.14 (quoting *United States v. Acosta*, 357 F.Supp.2d 1228, 1239–40 (D. Nev. 2005)).

For largely the same reasons discussed above, each of the requested categories of materials must be produced under *Brady* and its progeny. Particularly to the extent any of the requested materials exists and is simply in the possession of a different federal agency, it is incumbent upon the government to learn of and produce such materials to the defense.

## C. The Transcripts of Grand Jury Testimony (Not All Proceedings) Must Separately be Produced.

Disclosure of grand jury materials under Rule 6(e) is generally permitted upon a defendant's showing of a "particularized need." *See Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 221-22 (1979); *United States v. Sells Eng'g*, 463 U.S. 418, 442-443 (1983). This showing of "particularized need" requires that the party requesting disclosure show that the material sought is necessary to "avoid possible injustice in another judicial proceeding, that the need for disclosure is greater than the

need for continued secrecy, and that their request is structured to cover only material so needed." *Id*. at 443.

Brady requires the disclosure of evidence impeaching the testimony of a government witness when the reliability of that witness may be determinative of a criminal defendant's guilt of innocence.  *See Giglio v. United States*, 405 U.S. 150 (1972).  The mandates of *Brady* and *Giglio* override the requirements of the Jencks Act.  *See e.g., Chavis v. State of NC.*, 637 F.2d 213, 223 (4th Cir. 1980) (*Brady* is broader than Jencks and may be violated when government fails to disclose material that otherwise is not discoverable under Jencks Act); *United States v. Campagnuolo*, 592 F.2d 852, 860 (5th Cir. 1979) (stating without deciding that *Brady* would override Jencks Act when failure to order pretrial discovery would result in denial of defendant's due process rights); *United States v. Tarantino*, 846 F.2d 1384, 1414 n.11 (D.C. Cir. 1988) (government's *Brady* obligations are in no way lessened by the Jencks Act limitations).

The government has declined to produce any transcripts from the grand jury proceedings, on the basis that none of the trial witnesses testified before the grand jury. The government has acknowledged, however, that it may call the case agent as a trial witness.  If, as appears to be the case, the complaining witness did not testify before the grand jury, there is a substantial likelihood that the case agent did testify.  It would otherwise be difficult to establish probable cause.  If he does become a trial witness, the case agent's testimony before the grand jury obviously becomes even more significant, and disclosure in advance of trial all the more appropriate.

Even putting aside the possibility that the case agent becomes a trial witness, however, the transcripts of grand jury testimony should still be produced.  In particular, the considerations that weigh against disclosure to defense counsel solely for the purpose of trial preparation have little, if any, persuasive force at this point in time, especially in this case.

Ordinarily, courts weight the need for disclosure against the traditional policies

underlying grand jury secrecy:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment of their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at [t]he trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation

*U.S. Indus, Inc. v. U.S. Dist. Court for the Southern Dist. of Cal., Central Division*, 345 F.2d 18, 21 (9th Cir. 1965).

None of those considerations apply here.  Mr. Reyes has already been charged. There is no threat of witness intimidation, as none of the eyewitnesses appear to have testified before the grand jury.  Indeed, after a grand jury's investigation has terminated, most of the reasons for grand jury secrecy are no longer applicable, and those that may still technically apply are far less compelling.

Finally, Mr. Reyes is not at this time seeking disclosure of the entire transcript. Rather, he is seeking only disclosure of the witness testimony for use in trial preparation.  Accordingly, it is appropriate for the government to disclose the transcripts of any testimony before the grand jury in this case.

1

## IV.  CONCLUSION

2       For the reasons stated above, Mr. Reyes respectfully requests that the Court order

3  the government to produce all the requested materials pursuant to Rule 16 and *Brady*.

4

5                                    Respectfully submitted,

6                                    CUAUHTEMOC ORTEGA
                                     Federal Public Defender
7

8

9  DATED: August 8, 2024          By  */s/ James S. Threatt*
                                    _____
10                                  IJEOMA U. EKE
                                    JAMES S. THREATT
11                                  Deputy Federal Public Defenders
                                    Attorneys for Andrew Archie Reye
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# FEDERAL PUBLIC DEFENDER
## CENTRAL DISTRICT OF CALIFORNIA
321 EAST 2nd STREET
LOS ANGELES, CALIFORNIA 90012
213-894-2854
213-894-0081 FAX

**CUAUHTEMOC ORTEGA**
*Federal Public Defender*
**AMY M. KARLIN**
*Chief Deputy*

**ANGELA VIRAMONTES**
*Riverside Branch Chief*
**KELLEY MUNOZ**
*Santa Ana Branch Chief*
**K. ELIZABETH DAHLSTROM**
*Chief, Capital Habeas Unit*

Direct Dial: (213) 894-5310

**<u>Via Email</u>**
Thomas Magana
AUSA - Office of US Attorney
312 North Spring Street, Suite 1200
Los Angeles, CA 90012
Email: Thomas.Magana@usdoj.gov

     Re:    *USA v. Andrew Archie Reyes*, 23-cr-176-SVW

Dear AUSA Magana:

    I am writing to follow up on our March 21, 2023 and April 19, 2023 discovery requests. In those letters I requested a number of items including, but not limited to, the following:

    a.  All video and audio recordings documenting the interactions with my client on February 10, 2023 at the Ventura Social Security Office.  Those records should begin at least 10 minutes before the interaction began, and end at least 10 minutes after the interaction ended.

    b.  All video and audio recordings documenting what was occurring in the other public areas of the Ventura Social Security Office including, but not limited to, the inside lobby, on February 10, 2023 while the interactions with my client were taking place. Those recordings should begin at least ten minutes before the interaction with my client began and end at least 10 minutes after the interaction ended.

    c.  The name, address, and location of any person who was a percipient witness to a material event in the case, who was a substantial participant in the investigation of the case, or who may have information relevant and helpful to the defense.

    d.  All records, reports, notes, or any other documentation of any communication between any government agents and my client following his arrest on February 10, 2023.

June 1, 2023
Page 2

It is my understanding that to this point, we have received two discovery productions. The first production, which we received on March 27, 2023, included Early Bates Nos. 1–2.  The second production, which we received on April 30, 2023 (after our second discovery request) included Bates Nos. 1–6154.  Those productions contained the following items:

| Bates Begin | Production Date | Description |
|---|---|---|
| Early 1 | 3/27/2023 | Video, 2/10/23 Encounter, Overhead camera |
| Early 2 | 3/27/2023 | SSA Stay Away Order, 8/8/2017 |
| 1 | 4/30/2023 | Interview Transcript, Reyes, 2/12/23 |
| 26 | 4/30/2023 | Criminal history, Reyes |
| 44 | 4/30/2023 | Ventura PD Police Reports |
| 62 | 4/30/2023 | Victim Statement, JP to Captain Harvey, 2/10/2023 |
| 64 | 4/30/2023 | FPS Report, 2/10/2023 |
| 68 | 4/30/2023 | AIRS Incident Report, 2/10/2023 |
| 72 | 4/30/2023 | DMC Event Notes, 2/10/23 |
| 75 | 4/30/2023 | FPS Event Log, 8/24/2018 |
| 76 | 4/30/2023 | FPS Event Log, 8/7/2017 |
| 77 | 4/30/2023 | SSA AIRS Report, 8/5/2022 |
| 79 | 4/30/2023 | SSA AIRS Report, 8/7/2017 |
| 82 | 4/30/2023 | Patient care report, Reyes, 2/10/23 |
| 92 | 4/30/2023 | SSA visitor log, 2/10/23 |
| 95 | 4/30/2023 | |

June 1, 2023
Page 3

|  |  | Certificate of authenticity, Ommnet Property Management, 2/13/23 |
|---|---|---|
| 97 | 4/30/2023 | DHS Operations Log, JP, 2/10/23 |
| 98 | 4/30/2023 | Post order (FPS) |
| 118 | 4/30/2023 | Photos; JP and Mr. Reyes |
| 133 | 4/30/2023 | Photos; Ventura SSA exterior |
| 141 | 4/30/2023 | Cellbrite Extraction Report |
| 5705 | 4/30/2023 | Contract between FPS and Paragon |
| 6155 | 4/30/2023 | Interview, Mr. Reyes, Video 1 of 4 |
| 6156 | 4/30/2023 | Interview, Mr. Reyes, Video 2 of 4 |
| 6157 | 4/30/2023 | Interview, Mr. Reyes, Video 3 of 4 |
| 6158 | 4/30/2023 | Interview, Mr. Reyes, Video 4 of 4 |
| 6159 | 4/30/2023 | Interview of Mr. Reyes, Audio 1 of 1 |
| 6161 | 4/30/2023 | Axon_Body_3_Video_2023-02-10_1150_X60A6461A |
| 6162 | 4/30/2023 | Axon_Body_3_Video_2023-02-10_1217_X6031643C |
| 6163 | 4/30/2023 | Axon_Body_3_Video_2023-02-10_1153_X60A4148C |
| 6164 | 4/30/2023 | Axon_Body_3_Video_2023-02-10_1157_X6031643C |
| 6165 | 4/30/2023 | Axon_Body_3_Video_2023-02-10_1202_X6031643C |
| 6166 | 4/30/2023 | Axon_Body_3_Video_2023-02-10_1204_X60A4148C |
| 6167 | 4/30/2023 | Axon_Body_3_Video_2023-02-10_1204_X6031643C |

June 1, 2023
Page 4

| | | |
|---|---|---|
| 6168 | 4/30/2023 | Axon_Body_3_Video_2023-02-10_1205_X60A4276D |
| 6169 | 4/30/2023 | Axon_Body_3_Video_2023-02-10_1210_X60A6461A |

      **Based on that understanding, I have the following requests**.  *First*, I request the
following items, which are responsive to the discovery requests we have sent multiple times, and
which we believe the government should have in its possession, but has not turned over:

    a. All video and audio recordings documenting the interactions with my client on
February 10, 2023 at the Ventura Social Security Office.  Those records should begin
at least 10 minutes before the interaction began, and end at least 10 minutes after the
interaction ended.

    b. All video and audio recordings documenting what was occurring in the other public
areas of the Ventura Social Security Office, including, but not limited to, the inside
lobby, on February 10, 2023 while the interactions with my client were taking place.
Those recordings should begin at least ten minutes before the interaction with my
client began and end at least 10 minutes after the interaction ended.

    c. The name, address, and location of any person who was a percipient witness to a
material event in the case, who was a substantial participant in the investigation of the
case, or who may have information relevant and helpful to the defense.

    *Second*, I request the following addition items:

    a. All relevant and **<u>unredacted</u>** logs, sign-in sheets, and/or records that document
individuals who may have been present at the Ventura Social Security Office on
February 10, 2023 prior to and during the alleged incident with Mr. Reyes.

    b. Resume/CV of JP.

    c. Any impeachment material from the personnel file of JP, pursuant to *United
States v. Henthorn* 931 F.2d 29 (9th Cir. 1991).

    d. A complete copy of the Paragon Systems Security Policy Manual.

    e. A complete copy of the Federal Protective Service Policy Manual.

    f. Any training materials involving the use of force or de-escalation in the
possession of either the Federal Protective Service, Paragon Systems or the Social
Security Administration.

    g. Any Memorandum of Understanding and/or Contract between Paragon Systems
and the Social Security Administration.

    h. Any additional Memorandum of Understanding and/or Contract between Paragon
Systems and the Federal Protective Service.

    i. The original image files for any photographs provided in discovery including
Bates 118–140.

June 1, 2023
Page 5

      j.      Notice of which specific prior acts and/or criminal convictions the government intends to admit, pursuant to FRE 609.

    If the government has any of those items, we ask that you produce them immediately..  If the government does not have any of those items, we ask that you—(1) confirm that they do not exist or that the government does not have access to them, and (2) explain why those items do not exist or the government does not have access to them—in writing, immediately.

        *Third*, I request that you provide answers to the following two questions, in writing, immediately.

1. Is there any discovery you have provided that is missing from the table I provided above? Or is this list a complete accounting?
2. Are these all of the items that you believe are responsive to our requests? Or do you intend to produce additional discovery?

If any part of this letter is unclear, please contact me so that we may discuss it.

        Sincerely,

        */s/ Claire Rogerson*

        CLAIRE ROGERSON
        Deputy Federal Public Defender