1  E. MARTIN ESTRADA
   United States Attorney
2  MACK E. JENKINS
   Assistant United States Attorney
3  Chief, Criminal Division
   JEHAN M. PERNAS (Cal. Bar No. 320584)
4  Assistant United States Attorney
   Deputy Chief, International Narcotics,
5  Money Laundering and Racketeering Section
   THOMAS J. MAGAÑA (Cal. Bar No. 324542)
6  Assistant United States Attorney
   General Crimes Section
7        1200 United States Courthouse
         312 North Spring Street
8        Los Angeles, California 90012
         Telephone: (213) 894-0319/1344
9        Facsimile: (213) 894-0141
         Email:     jehan.pernas@usdoj.gov
10                  thomas.magana@usdoj.gov

11 Attorneys for Plaintiff
   UNITED STATES OF AMERICA

12                    UNITED STATES DISTRICT COURT

13               FOR THE CENTRAL DISTRICT OF CALIFORNIA

14 UNITED STATES OF AMERICA,        No. CR 22-00046-MCS

15          Plaintiff,              GOVERNMENT'S OPPOSITION TO
                                    DEFENDANT'S MOTION TO COMPEL
16             v.                   DISCOVERY

17 ANDREW ARCHIE REYES,             Hearing Date: August 26, 2024
                                    Hearing Time: 11:00 a.m.
18          Defendant.              Courtroom:    Courtroom of the
                                                  Hon. Steven V.
19                                                Wilson

20

21      Plaintiff United States of America, by and through its counsel

22 of record, the United States Attorney for the Central District of

23 California and Assistant United States Attorneys Thomas J. Magaña and

24 Jehan M. Pernas, hereby files its opposition to defendant Andrew

25 Archie Reyes' motion to compel discovery (Dkt. 71). This opposition

26 is based upon the attached memorandum of points and authorities, the

files and records in this case, and such further evidence and
argument as the Court may permit.

Dated: August 16, 2024          Respectfully submitted,

                                E. MARTIN ESTRADA
                                United States Attorney

                                MACK E. JENKINS
                                Assistant United States Attorney
                                Chief, Criminal Division

                                 */s/ Thomas J. Magaña*
                                THOMAS J. MAGAÑA
                                JEHAN M. PERNAS
                                Assistant United States Attorneys

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.    INTRODUCTION**

3        The government has been responsive to defendant's discovery

4   requests, regarding (1) additional video recordings from the social

5   security office, (2) impeachment material for J.P., (3) the face mask

6   policy at the Social Security Administration ("SSA") and the FPS, (4)

7   Mr. Reyes' entire Social Security Administration File, and (5) Grand

8   Jury transcripts.  At a meet and confer on August 8, 2024, the

9   government updated defense counsel on these discovery requests

10  detailed in their motion to compel, and following their motion to

11  compel, the government has continued to be in contact with counsel

12  and informed them (1) that there are no further video recordings from

13  the SSA beyond those provided, (2) that the government has complied

14  with its Giglio/Henthorn obligations regarding J.P., (3) that the

15  government has provided all documentation in its possession regarding

16  the mask requirement at the SSA, and (4) how to obtain any and all

17  documents related to Mr. Reyes from the SSA.  In short, the

18  government has complied with its discovery obligations, and

19  defendant's motion should be denied.

20       **A.    Background**

21       Defendant Andrew Reyes assaulted security guard J.P. on February

22  10, 2023. In a brief interaction that lasted under two minutes, and

23  has been fully captured on video[1], defendant Andrew Reyes

24  ("defendant") approached the front door of the Ventura Social

25  Security Administration Office ("SSA"). At the front entrance, J.P.,

26  a security guard employed by Paragon Systems and contracted to assist

27

28

---

[1] There is no audio.

the Federal Protective Service, provided defendant with a mask, which at that time was required to enter the facility. Defendant refused to wear the mask, grew upset, cursed at J.P., flung the mask at him, and struck J.P. in the shoulder with his fist. J.P. attempted to detain the defendant and a struggle ensued, during which J.P. pepper sprayed the defendant and the defendant grabbed J.P.'s baton and struck him multiple times. J.P. then drew his service weapon and pointed it at the ground, and defendant, feeling the effects of the pepper spray, relinquished the baton, and sat down.

On April 14, 2023, the government charged defendant in a single count indictment for violating 18 U.S.C. § 111(a)(1), (b) (Assault on a Person Assisting Federal Officers and Employees Using a Dangerous and Deadly Weapon, Resulting in Bodily Injury).

**B.   Discovery**

Since defendant's arrest, the government has produced video footage of his assault on J.P. from two different cameras (as well as footage from nine other cameras on the property), video footage from the body camera videos of the Ventura Police Department ("VPD") who responded to the incident, and video recordings of defendant's mirandized interview. It has further produced over 6,000 pages of other discovery, including photos from the scene, law enforcement reports, witness statements, defendant's prior arrest reports and certified conviction records, social security documentation of his prior threats and misconduct at social security offices, the contents of his phone, and the operative contract and post orders for protective security officers at the Ventura SSA, among many other items.

1        On August 8, 2024, defendant filed a motion to compel five

2   categories of discovery.  As explained below, defendant's motion is

3   meritless as to each category or is already moot.

4        Defense Request 1: All video (and audio) recordings of
         public areas at the Ventura Social Security Office,
5        beginning 10 minutes before, and continuing 10 minutes
         after, the February 10, 2023 incident between Mr. Reyes and
6        the complaining witness, J.P.;

7        The government has produced the full video of defendant's

8   assault on J.P. and all related interactions. The Social Security

9   Office Surveillance video is 27 minutes long, begins approximately

10  one minute before defendant approaches the SSA doorway, and concludes

11  after he departs the scene in police custody. See USAO_006658. The

12  Government has also produced security video from ten different

13  OmniNet Property Management cameras on the property, some of which

14  show defendant walking across the property toward the social security

15  office, as well as his assault of J.P., and its aftermath. This video

16  begins approximately five minutes before his assault and continues

17  for approximately twenty minutes thereafter. See USAO_006160.

18  Defendant's demand for video footage of the inside of the Ventura SSA

19  is not relevant to this case, as defendant never entered the Ventura

20  SSA, and his entire interaction with J.P. is captured on an exterior

21  camera. Defendant's demand for an adverse jury instruction on this

22  subject is therefore meritless.

23       Defense Request 2: Any and all impeachment material from
         the personnel file of the complaining witness, J.P., who
24       was a Paragon security officer stationed at the Ventura
         Social Security Office
25
         The Government has complied with its Giglio/Henthorn obligations
26  and notified the defense that there is no information responsive to
27  this request.

28
                                    3

1

> Defense Request 3: The face mask policy in effect at the
> Ventura Social Security Office on February 10, 2023, and

2

> any related policies promulgated by the Social Security
> Administration as to the enforcement of any such policy at

3

> the Ventura Office

4    The government has provided the defense with a photos of the

5  sign posted at the doorway where J.P. was standing on the day of

6  defendant's assault, which states clearly in block text: "ATTENTION

7  VISITORS YOU MUST WEAR A FACEMASK AT ALL TIMES," (USAO_006613; Magaña

8  Decl. Ex. A), as well as the PSO Post Orders in effect on the date of

9  the incident, which state "PSO [Protective Security Officer] will

10  instruct visitors to maintain physical distancing and to wear a

11  mask." (USAO_000110). The government has further provided the defense

12  with electronic copies of multiple covid-related signs provided by

13  the SSA. (Magaña Decl. Ex. B).  These documents more than make clear

14  that the Ventura SSA required all customers to wear a mask on the

15  date that defendant assaulted J.P. Defendant has not explained what

16  relevance any further documents on this subject might have, and this

17  request seeks evidence that is cumulative if not irrelevant.

18  Nevertheless, the government has requested that SSA OIG provide any

19  further documents responsive to this request, and will provide

20  anything further it receives from the SSA.

21

> Defense Request 4: Mr. Reyes's entire file maintained by
> the Social Security Administration.

22

23    These documents are freely available to the defendant upon his

request, and are not in the government's exclusive possession. The

24

government has already produced all files related to the defendant

25

that were in the custody of the Ventura Social Security Office, and

26

has provided defendant with the appropriate form to request any

27

28

4

category of his records from the SSA more broadly, and also offered to help expedite the request.

Defense Request 5: All transcripts of testimony before the grand jury.

None of the government's trial witnesses testified before the grand jury. Defendant has not met his burden to demonstrate a particularized need for grand jury transcripts.

Accordingly, the government has complied with its discovery obligations and defendant's motion should be denied.

## II.  LEGAL STANDARD

Criminal discovery arises from three primary sources. First, F.R.C.P. 16 establishes guidelines for pretrial production by the government of certain limited materials. Second, under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, including Giglio v. United States, 405 U.S. 150 (1972), the government is obliged to turn over to the defense evidence in its possession that is exculpatory or favorable to the defendant. Finally, under 18 U.S.C. § 3500 and Federal Rule of Criminal Procedure 26.2, both parties must disclose prior statements by witnesses after the witness has testified. None of these sources authorize "fishing expeditions" or sweeping discovery requests. United States v. Bagley, 473 U.S. 667, 675 (1985); see also United States v. Agurs, 427 U.S. 97, 106 (1976) ("there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor").

Rule 16 imposes discovery obligations upon both the government and the defendant. Rule 16(a)(1) lists five categories of materials that must either be produced or made available for inspection, most relevant here: documents and objects in the possession of the

government that are material to the preparation of the defense or intended to be used in the government's case-in-chief.  With respect to this category, Rule 16(a)(1)(E)(i) states that a defendant is entitled to discovery of such items if they are "within the government's possession, custody or control" and the defendant can show they are "material to preparing the defense."[2]  Information is in the prosecutor's "possession" if it is held by members of the prosecution team, such as investigating agents, or if it is held by other executive branch agencies and the prosecutor has "knowledge of and access to" the evidence. United States v. Bryan, 868 F.2d 1032, 1036 (9th Cir. 1989)

Discovery in criminal cases is limited.  Indeed, "[t]here is no constitutional right to discovery in a criminal case." Weatherford v. Bursey, 429 U.S. 545 (1977).  To obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality.  This "requires a presentation of facts which would tend to show that the [g]overnment is in possession of information helpful to the defense." United States v. Stever, 603 F.3d 747, 752 (9th Cir. 2010).  "A general description of the materials sought or a conclusory argument as to their materiality is insufficient to satisfy the requirements of [Rule 16(a)(1)(E)(i)]."  United States v. Cadet, 727 F.2d 1453, 1468 (9th Cir. 1984) (quoting United States v. Conder, 423 F.2d 904,

---

[2] Effective December 1, 2013, Rule 16(a)(2) was amended to clarify information that is not subject to disclosure. Notably, discovery or inspection of reports, memoranda or other internal government documents made by a government attorney or other government agent investigating or prosecuting the case are not discoverable, except as permitted in Rule 16(a)(1)(A) through (D), (F) and (G).  Fed. R. Crim. P. 16(a)(2).  The rule also clarifies that statements made by prospective government witnesses are not discoverable except as provided in the Jencks Act. Id.

910 (6th Cir. 1970) (defendant's discovery request that sought documents the government did not intend to use at trial was too far ranging and potentially burdensome)); see also United States v. Muniz-Jaquez, 718 F.3d 1180, 1183 (9th Cir. 2013) ("General descriptions of information sought and conclusory allegations of materiality are insufficient."). "The government has no obligation to produce information which it does not possess or of which it is unaware." Sanchez v. United States, 50 F.3d 1448, 1453 (9th Cir. 1995). "[A] federal prosecutor need not comb the files of every federal agency which might have documents regarding the defendant in order to fulfill his or her obligations under [Rule 16]." United States v. Bryan, 868 F.2d 1032, 1036 (9th Cir. 1989); see also Kyles v. Whitley, 514 U.S. 419, 437 (1995) ("We have never held that the Constitution demands an open file policy . . . .").

The government's disclosure obligations under Brady and Giglio apply only to material and favorable evidence. United States v. Ruiz, 536 U.S. 622, 629 (2002) (noting that "the Constitution does not require the prosecutor to share all useful information with the defendant"). The government continues to comply with its Brady obligations in this case, but Brady does not require the government to disclose every scrap of evidence that could conceivably benefit a defendant. Moore v. Illinois, 408 U.S. 786, 795 (1972).

**III. ARGUMENT**

    **A.    The Government Has Produced All Video and Audio Recordings of Defendant's Assault on J.P., and Defendant's Demand for Further Recordings Seeks Irrelevant Evidence**

On March 26, 2023, the government produced surveillance video of Mr. Reyes' assault on J.P. in a pre-indictment production.

(USAO_Early_000001). Shortly thereafter, on April 30, 2023, the government produced additional video from ten OmniNet surveillance cameras in the same complex showing different views of the building during the relevant time, including the defendant's approach to the SSA, and a second camera angle on the assault as it took place (as well as the ensuing police response). (USAO_006160). This video begins approximately five minutes before defendant assaulted J.P., and continues for approximately 20 minutes afterward. The government also produced the body camera videos of the Ventura Police Officers (VPD) who responded to the incident (USAO_006161-6169), and video recordings of defendant's mirandized interview (USAO_006155-6157). On August 9, 2024, in response to defense requests, the government obtained and produced a longer, 27-minute version of the original video from the social security office exterior camera, beginning approximately one minute before defendant approached the social security office, and continuing for approximately another twenty-five minutes following the assault until defendant was taken away in police custody. (USAO_006658). This is all the video in the government's possession or to which it has access, and all the video that has been preserved from the day of the event.

The government does not have video of the interior of the Ventura SSA in its possession, and such video is neither material nor relevant to this case because the defendant never entered the Ventura SSA. Defendant's first argument on this subject, that footage of the inside lobby is material because it would "show[] the entire interaction between Mr. Reyes and J.P[,]" (Def's Mot. to Compel ("Mot." at 4), is therefore demonstrably false. The entire interaction—from Mr. Reyes walking across the parking lot and up to

8

the entrance, to his being removed in a police vehicle—is captured on two separate cameras, and at no point does defendant ever enter the building. Interior video footage would therefore reveal nothing at all about defendant's interaction with J.P.

Next, defendant argues that video of the interior of the building is material because it will "show[] what Mr. Reyes may have seen and been responding to when he encountered J.P." (Id.) As a threshold issue, it is already clear what defendant is responding to from the video: J.P. hands defendant a facemask, and then defendant throws it at J.P.'s face before punching him. The entire sequence of events from J.P.'s arrival at the door to his punching J.P takes approximately fourteen seconds, during which time defendant also throws the mask and briefly walks away. (See USAO_006658). The video makes clear that defendant was not responding to anything except the fact that J.P. told him he needed to wear a facemask in accordance with the posted sign.

The defense argues, however, that the interior video is material because Mr. Reyes stated during his interview that "'they already had someone laid out on the floor [inside the office]' and that was why 'they [J.P.] didn't wanna even let me in there,'" (Mot. at 4.). As the full text of those interview statements makes clear, however, law enforcement had good reason for not finding defendant's assertions credible, as defendant repeatedly claimed he had been deliberately ambushed by a group of people at the SSA who were hostile to him:

> Officer Vasquez: "what's that ten minute before and ten minute after going to show us?"
>
> Defendant: "I'm pretty sure it'll show you that it was all planned, everything they did was planned. Everything, everything. They already had someone laid out on the floor

9

they wouldn't even let me in there. Alright? That's why I want you to get the video.

(USAO_006159, 3:20-3:35). Defendant reiterates his assertion that he was the victim of a concerted plan again the next time he raises the subject of cameras:

> All you gotta do is pull up the cameras man, you guys'll see that it was all [expletive] planned, everything they did, there's a whole group of people there, the lady was screaming and yelling we're the ones taking you. Just pull up the camera audio and video and you guys'll see.

(Id. at 10:53-11:07). Defendant's insistence that he had been caught in a pre-planned ambush appears to have been connected to his larger belief that there are people with a vendetta against him at the social security office:

> Defendant: I've been fighting with the social security office and a group of officers and a group of people for four years over them telling me that I'm not who I am.

(Id. at 2:10-2:15). While law enforcement may sometimes follow up on an investigate lead provided by a defendant, they are not required to indulge a defendant in what is clearly a fantasy, particularly in this case, where they were fully aware defendant had never entered the Ventura SSA. Defendant's second claimed basis for materiality, therefore—that the interior cameras are relevant because defendant thinks he saw something going on in the office that somehow influenced his behavior—also fails.

Finally, no further video is available.  Because defendant never entered the Ventura SSA and the interior video was not relevant to this case, video of the interior of the office was not preserved. Security surveillance video at the Ventura SSA is overwritten after between 30 and 45 days. In this case, that would have been on March 26, 2023, at the latest (45 days after February 10, 2023). By the

1  time defense counsel requested additional video on April 19, 2023

2  (Mot. at 1), therefore, any video not already preserved from the date

3  of the incident would have been overwritten approximately a month

4  earlier. Because any additional video evidence would show nothing

5  pertinent to this case, however, defendant's request for an adverse

6  jury instruction (made in a footnote) is without merit, and the Court

7  should deny it.[3]

8      **B.    The Government Has Produced All Evidence in Its Possession
   Related to the Face Mask Policy at the Ventura SSA, and Any

9      Further Production Will be Cumulative**

10      The government has provided the defense with photos of the signs

11  posted at the doorway where J.P. was standing on the day of

12  defendant's assault, which states clearly in block text: "ATTENTION

13  VISITORS YOU MUST WEAR A FACEMASK AT ALL TIMES," (USAO_006613; Magaña

14  Dec. Ex. A), as well as the PSO Post Orders in effect on the date of

15  the incident, which state "PSO [Protective Security Officer] will

16  instruct visitors to maintain physical distancing and to wear a

17  mask." (USAO_000110). The government has further provided the defense

18  with electronic copies of multiple covid-related signs issued for

19  posting at the SSA. (Magaña Decl. Ex. B). These documents more than

20  make clear that the Ventura SSA required all customers to wear a mask

21  on the date that defendant assaulted J.P.[4] Defendant has not

22  explained what relevance any further documents on this subject might

23  have, and this request seeks evidence that is cumulative if not

24  

25      [3] Defendant's motion does not explain its basis for seeking an
   adverse jury instruction, and the government reserves the right to

26  respond fully should defendant make such an argument.

27      [4] Compliance with posted signs is also required by 41 CFR 102-
   74.385 ("Persons in and on property must at all times comply with
   official signs of a prohibitory, regulatory or directory nature and

28  with the lawful direction of Federal police officers and other
   authorized individuals.")

irrelevant. Nevertheless, the government has requested that SSA OIG provide any further documents responsive to this request, and will provide anything further it receives from the SSA.

### C.   The Government Has Produced All Material from the Defendant's SSA File In Its Possession

Defendant has requested all materials from the defendant's social security file.  While it is unclear how any of these additional materials are relevant in any way to defendant's assault of J.P., regardless, as noted above, the government has already produced all files related to the defendant that were in the custody of the Ventura Social Security Office. Additionally, the government has provided defendant with the appropriate form to request any category of records he wishes from SSA more broadly, and has further offered to help expedite defendant's request. Consequently, this issue has already been addressed.

### D.   Defendant is Not Entitled to Grand Jury Transcripts

Defendant has to show that there is a "particularized need" for disclosure of grand jury materials under Rule 6(e), but fails to demonstrate any such need beyond speculating that perhaps there may be impeachment material in the transcripts. The government is aware of its Jencks obligations, and has informed defendant that none of the government's witnesses at trial testified in grand jury.

Grand jury secrecy is governed by Federal Rule of Criminal Procedure 6(e) and by more than a century of jurisprudence holding that the reasons for grand jury secrecy are "compelling" given that the grand jury is a cornerstone of the criminal justice system, holding a "'high place . . . as an instrument of justice.'" Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 399 (1959)

1   (quoting <u>Costello v. United States</u>, 350 U.S. 359, 362 (1956)).  As

2   the Supreme Court explained in <u>Pittsburgh Plate Glass</u>, the grand jury

3   is "convened as a body of laymen, free from technical rules, acting

4   in secret, pledged to indict no one because of prejudice and to free

5   no one because of special favor."  360 U.S. at 400 (internal

6   quotation marks omitted).  "To make public any part of its

7   proceedings would inevitably detract from its efficacy," as "[g]rand

8   jurors would not act with that independence required of an accusatory

9   and inquisitorial body."  <u>Id.</u>; <u>see</u> <u>also</u> <u>Douglas Oil Co. of Cal. v.</u>

10  <u>Petrol Stops Nw.</u>, 441 U.S. 211, 218 (1979) ("We consistently have

11  recognized that the proper functioning of our grand jury system

12  depends upon the secrecy of grand jury proceedings.").  The purposes

13  of grand jury secrecy are enumerated in <u>Douglas Oil</u> and include

14  "insur[ing] the utmost freedom to the grand jury in its

15  deliberations" and "encourag[ing] free and untrammeled disclosures by

16  persons who have information with respect to the commission of

17  crimes."  441 U.S. at 219 n.10 (citing <u>United States v. Procter &</u>

18  <u>Gamble Co.</u>, 356 U.S. 677, 681-682 n.6 (1958)).

19      Before a court may order the disclosure of grand jury material,

20  a defendant must first "show[] that a ground may exist to dismiss the

21  indictment because of a matter that occurred before the grand jury."

22  Fed.R.Crim.P. 6(e)(3)(E)(ii).  This requires a defendant to

23  demonstrate a strong showing of a "particularized need" or

24  "compelling necessity" for disclosure which outweighs the policy of

25  grand jury secrecy.  Fed.R.Crim.P. 6(e); <u>Douglas Oil Co. v. Petrol</u>

26  <u>Stops Northwest</u>, 441 U.S. 211, 218-22 (1979); <u>United States v. Sells</u>

27  <u>Engineering, Inc.</u>, 463 U.S. 418, 443 (1983).  The particularized need

28  standard is sufficiently met when the parties show "the material they

13

seek is needed to avoid a possible injustice in another judicial
proceeding, that the need for disclosure is greater than the need for
continued secrecy, and that their request is structured to cover only
material so needed." Douglas Oil Co., 441 U.S. at 222.  Put simply,
Rule 6(e) "is not an invitation to engage in a fishing expedition to
search for grand jury wrongdoing and abuse when there are no grounds
to believe that any wrongdoing or abuse has occurred." United States
v. Loc Tien Nguyen, 314 F. Supp. 2d 612, 616 (E.D. Va. 2004).
Indeed, the Ninth Circuit has explicitly cautioned district courts
against "allowing across the board fishing expeditions" into grand
jury transcripts.  United States v. Kim, 577 F.2d 473, 478 (9th Cir.
1978).

Defendant's request in this case is a fishing expedition.
Defendant has failed to make any actual factual allegations that
would support a particularized need for grand jury transcripts.
Consequently, his request should be denied.

**IV.  CONCLUSION**

For the reasons outlined above, the government respectfully
requests that the Court deny defendant's Motion to Compel.